IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CARDTEK INTERNATIONAL, LTD a/k/a CARDTEK INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> CHICK-FIL-A, INC., <br><br> Defendant. | Case No. _____ |

**PLAINTIFF CARDTEK INTERNATIONAL'S
ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff CardTek International, Ltd. a/k/a Cardtek International, Inc. ("Cardtek" or "Plaintiff") by and through its undersigned counsel, pleads the following against Defendant Chick-fil-A, Inc. and alleges as follows:

**THE PARTIES**

1. Plaintiff CardTek International, Ltd. a/k/a Cardtek International, Inc. ("Cardtek") is located at 1900 Mill Road Manhattan, Kansas 66502. Cardtek is the assignee and exclusive owner of all rights, title, and interest in and owns all causes of action related to U.S. Patent Nos. 7,039,593 ("the '593 Patent"), 8,600,770 ("the '770 Patent"), and 10,628,818 ("the '818 Patent"), titled the "Payment Convergence System and Method."

2. Defendant Chick-fil-A, Inc. ("Chick-fil-A") is a Georgia corporation having its principal place of business at 5200 Buffington Road, Atlanta, Georgia, 30349. It can be served with process by serving its registered agent: CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq*.

4. This Court has personal jurisdiction over Chick-fil-A because it is present in and regularly transacts and conducts business in and with the residents of this District and the State of Texas. Chick-fil-A regularly does and solicits business across Texas and engages in persistent conduct and derives substantial revenue from goods and services provided to customers in the State of Texas, including in the Eastern District of Texas.

5. Plaintiff's causes of action arise from Defendant's contacts with and activities in this District and the State of Texas. Defendant has committed acts that infringe the asserted patents within this District and the State of Texas by conducting business in the District, by at least offering for sale and selling products, programs, and services that practice the claimed inventions of the Patents-in-Suit. In addition, Defendant owns and operates its stores in this District that support and process products and services that practice the claimed inventions of the Patents-in-Suit.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c), (d) and 1400(b) because Defendant has a permanent and continuous presence in, has stores where it regularly conducts business in, has committed acts of infringement in, and maintains regular and established places of businesses in this Eastern District of Texas.

7. In addition, Chick-fil-A maintains a regular and established place of business in this district through one or more restaurants, including, for example, at 2601 Richmond Road; Texarkana, TX 75503. Chick-fil-A uses the Chick-fil-A App to allow customers to pay for orders from customers at one or more Chick-fil-A restaurants located in this district.

8. Cardtek is the assignee and owns all right, title, and interest to U.S. Patent Nos. 7,039,593 ("the '593 Patent") and 8,600,770 ("the '770 Patent"), with all substantive rights in and to

that patent, including the sole and exclusive right to prosecute this action and enforce the '593 and '770 Patents against infringers, and to collect damages for all relevant times.

## THE PATENTED TECHNOLOGY

9. This lawsuit involves the '593 Patent and the '770 Patent. These patents claim systems and methods that converge multiple, independent payment sources into a single payment vehicle through a single point of sale terminal. This dynamic data processing has the capability to combine multiple sources of information onto a single medium.

10. The specification of the patents describes a new payment system and method that converges multiple payment sources that may be ascertained, for example, from a "Smart Card." But the patented technology does not depend or rely upon the existence of a physical card. Many companies, including the Defendant, have utilized digital applications to function as an electronic payment facility for use at the point of sale. As explained below, these payment applications utilize and infringe upon the systems and processes contemplated in the '593 and '770 Patents. The patents' claims speak in terms of a "portable storage medium," which is practiced by the Defendant's payment application as a method of storing convergence information.

11. At its core, the inventive systems and methods store information about relationships between the cardholder and various accounts that are possible payment sources. Each layer of stored payment information contains a different type of information that can be used independently from the information of all other layers. For example, first party information can be stored, which includes any payment that is directly funded by the card user, (e.g., user's credit card account, debit card, check, EBT or any other account in which the funds are controlled by the user, and other imforation associated with those payment sources), along with secondary payment information (e.g., benefits that reduce payment amount to be paid with the card holder's credit card), and third-party payment information (e.g., insurance coverage that is secondary to a primary

insurance policy, any private line of credit accounts, such as those related to healthcare, governmental assistance, gifts certificates, charitable gifts, prepayments, loyalty credit, or any other source that is not the primary insurance company and is not a direct payment from the patient).

12. Thus, the '593 and '770 patents describe not only housing information regarding the card holder's various accounts in a single medium, but also converges these independent payment sources together such that a point of sale terminal may amalgamate multiple payment sources into one ultimate source that can be used for myriad transactions. Through the processing capabilities of the Patents-in-Suit, sources of payment, along with any accompanying information that is stored, converge at the point of sale. By converging the payment options, or sources, the inventive systems and methods process that information to determine the amount that each source is to pay and then obtains the payment from the multiple independent sources at the point of sale. The Patents-in-Suit's technology creates an improved payment system and improved electronic payment network utilizing new point of sale terminal technology that allows multiple independent payment sources, with their respective servers and protocols, to be converged and utilized all in a single transaction occurring at the point of sale terminal.

## **FIRST CLAIM**

### **(Infringement of U.S. Patent No. 7,039,593)**

13. Cardtek re-alleges and incorporates herein by reference Paragraphs 1–14 of its Complaint.

14. The '593 Patent, entitled "Payment Convergence System and Method" was duly and lawfully issued on May 2, 2006. A true and correct copy of the '593 Patent is attached hereto as Exhibit 1.

15. The '593 Patent names Robert David Sager as inventor. Ex. 1 at 1.

16. The '593 Patent has been in full force and effect since its issuance. Cardtek owns,

by assignment, the entire right, title, and interest in and to the '593 Patent, including the right to seek damages for past, current, and future infringement thereof.

17. Cardtek is informed and believes, and thereon alleges, that Chick-fil-A has infringed one or more claims of the '593 Patent, in violation of 35 U.S.C. § 271, by, among other things, making, using, offering to sell, and selling within the United States, supplying or causing to be supplied in or from the United States, and importing into the United States, without authority or license, Cardtek's technology that use the point-of-sale payment convergence system and method in an infringing manner.

18. The accused products include Chick-fil-A's point of sale terminals and the Chick-fil-A App, along with associated backend servers.

19. For example, the accused products embody every limitation of at least Claim 1 of the '593 Patent, literally or under the doctrine of equivalents, as set forth below. Likewise, a claim chart comparing independent claim 1 of the '593 Patent to a representative Accused Product is attached as Exhibit 2. The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

20. Chick-fil-A is a privately held fast-food restaurant chain that operates more than 3,164 restaurants across 48 states, the District of Columbia, and Canada.

21. Chick-fil-A makes and offers an application that allows its customers to earn points when they make qualifying purchases at Chick-fil-A locations. For example, Chick-fil-A "Red Members" can earn 12 points for every dollar spent at a Chick-fil-A location.

22. To utilize the application, Chick-fil-A customers must provide payment information for their credit card, debit card, e-Wallet, or similar payment source. To earn points, the customer presents a barcode or QR code generated by the application at the restaurant's point-of-sale terminals. The application then automatically processes payment information from the

user-provided payment source to consummate the transaction.

23. Once a customer has accumulated a sufficient number of points, Chick-fil-A's application can be used to purchase menu items through a combination of points and dollars from the user-provided payment source. Thus, when a customer uses the Chick-fil-A application at a particular restaurant's point-of-sale terminal, the point of sale system establishes a transaction total, and the customer can utilize points to pay for qualifying menu items—the primary payment source—and pay any remaining balance using the user-provided payment source—the secondary payment source. All of which is done at the point of sale.

24. Chick-fil-A's application stores convergence information including data about a plurality of payment sources for the transaction and said convergence information including processing instructions, including order information for utilization of said plurality of payment sources. In other words, Chick-fil-A's application converges payment sources at a point of sale, determines which payment sources are primary and which are ancillary, processes this information, and then utilizes this hierarchy to complete the transaction—all of which occurs after the total amount of the transaction is determined.

25. On information and belief, the infringing technology utilized by Chick-fil-A in administering its award program and application was obtained directly or indirectly from disclosure later patented by Robert David Sager and its assignee, Cardtek.

26. Chick-fil-A directly infringed the '593 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing in or into the United States, without authority, products that fall within the scope of one or more claims of the '593 Patent in violation of 35 U.S.C. § 271(a).

27. Plaintiff has fully complied with the marking requirements of 35 U.S.C. § 287. Neither Robert David Sager nor Cardtek have made or sold any products practicing the claims of

the '593 Patent.  Likewise, no other party had a license to the '593 patent prior to its expiration.

28. As a result of Chick-fil-A's infringement of the '593 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Chick-fil-A's infringement, but in no event less than a reasonable royalty for the use made of the invention by Chick-fil-A, together with interest and costs as fixed by the Court.

## SECOND CLAIM

### (Infringement of U.S. Patent No. 8,600,770)

29. Cardtek re-alleges and incorporates herein by reference Paragraphs 1–28 of its Complaint.

30. The '770 Patent, entitled "Payment Convergence System and Method" was duly and lawfully issued on December 3, 2013. A true and correct copy of the '770 Patent is attached hereto as Exhibit 3.

31. The '770 Patent names Robert David Sager as inventor. Ex. 3 at 1.

32. The '770 Patent has been in full force and effect since its issuance. Cardtek owns by assignment the entire right, title, and interest in and to the '770 Patent, including the right to seek damages for past, current, and future infringement thereof.

33. Cardtek is informed and believes, and thereon alleges, that Chick-fil-A has infringed one or more claims of the '770 Patent, in violation of 35 U.S.C. § 271, by, among other things, making, using, offering to sell, and selling within the United States, supplying or causing to be supplied in or from the United States, and importing into the United States, without authority or license, Cardtek's technology that use the point-of-sale payment convergence system and method in an infringing manner.

34. The accused products include Chick-fil-A's point of sale terminals and the Chick-fil-A App, along with associated backend servers.

35. For example, the accused products embody every limitation of at least Claim 7 of the '770 Patent, literally or under the doctrine of equivalents, as set forth below. Likewise, a claim chart comparing independent claim 7 of the '770 Patent to a representative Accused Product is attached as Exhibit 4. The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

36. As detailed above, the accused products can be used at Chick-fil-A restaurants to purchase menu items through a combination of points and dollars. Using the application at the restaurant's point-of-sale terminal, Chik-fil-A's application allows its customers to purchase menu items by redeeming accumulated points—the primary payment source—and to pay the remaining balance on the transaction with funds from their credit card, debit card, e-Wallet, or similar payment source—the secondary payment source. Information regarding these payment sources are all stored in the Chick-fil-A application. In other words, Chick-fil-A's application contains a convergence of payment sources at a point of sale through which a primary and secondary payment source are determined and drawn down to complete a transaction—all of which occurs after the total amount of the transaction is determined. This processing and utilization of payment source information all occurs at the point of sale.

37. On information and belief, the infringing technology utilized by Chick-fil-A in administering its award program and application was obtained directly or indirectly from disclosure later patented by Robert David Sager and its assignee, Cardtek.

38. Chick-fil-A has directly infringed the '770 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing in or into the United States, without authority, products that fall within the scope of one or more claims of the '770 Patent in violation of 35 U.S.C. § 271(a).

39. Plaintiff has fully complied with the marking requirements of 35 U.S.C. §287.

Neither Robert David Sager nor Cardtek have made or sold any products practicing the claims of the '770 Patent. Likewise, no other party had a license to the '770 patent prior to its expiration.

40. As a result of Chick-fil-A's infringement of the '770 Patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for Chick-fil-A's infringement, but in no event less than a reasonable royalty for the use made of the invention by Chick-fil-A, together with interest and costs as fixed by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter:

a. A judgment in favor of Plaintiff that Defendant has infringed, either literally and/or under the doctrine of equivalents, the '593 Patent and the '770 Patent;

b. A judgment and order requiring Defendant to pay Plaintiff its damages, enhanced damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of the '593 Patent and the '770 Patent;

c. A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to Plaintiff, including without limitation, pre-judgment and post-judgment interest;

d. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Defendant; and

e. Any and all other relief as the Court may deem appropriate and just under the circumstances.

| | |
|---|---|
| Dated: January 31, 2025 | Respectfully submitted,<br><br>/s/ *Logan E. Johnson*<br>Logan E. Johnson<br>Texas State Bar No. 24013855<br>Lead Attorney<br><br>Varant Yegparian<br>Texas State Bar No. 24070893<br>HICKS JOHNSON PLLC<br>700 Louisiana Street, Suite 2650<br>Houston, Texas 77002<br>Tel: (713) 357-5150<br>Fax: (713) 357-5160<br>ljohnson@hicksjohnson.com<br>vyegparian@hicksjohnson.com<br><br>Kevin Cadwell<br>Texas State Bar No. 24036304<br>Michael Reeder II<br>Texas State Bar No. 24070481<br>Lisa Thomas<br>Texas State Bar No. 24079455<br>Brad Bowling<br>Texas Bar No. 24040555<br>CADWELL CLONTS REEDER & THOMAS LLP<br>5373 W. Alabama Street, Suite 457<br>Houston, Texas 77056-5998<br>Tel: (713) 360-1560<br>kcadwell@ccrtlaw.com<br>mreeder@ccrtlaw.com<br>lthomas@ccrtlaw.com<br>bbowling@ccrtlaw.com<br><br>J. Thad Heartfield<br>Texas State Bar No. 09347000<br>THE HEARTFIELD LAW FIRM<br>2195 Dowlen Road<br>Beaumont, Texas 77706<br>(409) 866-3318<br>thad@heartfieldlawfirm.com<br><br>***Attorneys for Plaintiff (Counter-Defendant) Cardtek International, Inc.*** |